UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ARANTZA ESPINOZA,                                    CASE NO.

      Plaintiff,

vs.

DELTA GALIL USA, INC.,
A Foreign for Profit Corporation
D/B/A SPLENDID

      Defendant.
_____/

## COMPLAINT FOR DECLARATORY AND
## INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND

Plaintiff, ARANTZA ESPINOZA, through undersigned counsel, sues Defendant DELTA GALIL USA, INC., a foreign corporation d/b/a SPLENDID (hereinafter referred to as "SPLENDID"), for declaratory and injunctive relief, and damages, and alleges as follows:

1)      This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

2)      This action is also brought pursuant to 28 C.F.R. Part 36.

3)      This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

4)      Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

5)      Plaintiff is sui juris, and she is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

6)      Defendant, SPLENDID, is a foreign limited liability company authorized to do business and doing business in the State of Florida.

7)      Defendant, SPLENDID, is a company that sells women's clothing, swimwear, bridalwear, sleepwear, kid's clothes, home decor, shoes, and accessories. There is a retail location in Miami-Dade County.

8)      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase a t-shirt.

10)      Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

11)      The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

12)      The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

13)      Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

14)      Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

15)      At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision.

16)      Plaintiff's visual impairment interferes with her day-to-day activities and causes limitations in visualizing their environment.  As such, Plaintiff is a member of a protected class

under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

17)    Plaintiff regularly uses the computer, but she needs the assistance of special software for visually impaired persons.  The software that she uses is screen reader software that is readily available commercially.

18)    Defendant is a private entity which owns and operates retail locations.  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

19)    Defendant's website is a place of public accommodation per 42 U.S.C. Section 12181(7)(E) because it's an extension of Defendant's brick and mortar stores.  The public is able to, among other things, view the products available at defendant's locations, purchase women's clothing, swimwear, bridalwear, sleepwear, kid's clothes, home decor, shoes, and accessories through defendant's website, obtain 15% off when you sign up for texts, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand.

20)    Since the Defendant's website is a public accommodation, it must comply with the requirements of the ADA.  The website cannot discriminate against individuals with disabilities.

21)    Plaintiff is a customer of Defendant who is and was interested in purchasing a t-shirt through Defendant's website and at Defendant's stores and visiting Defendant's brick and mortar locations.

22)     Plaintiff is not able to visit the physical locations without the assistance of a family member or caretaker, so the ability to purchase merchandise on Defendant's website for delivery to her home is important to her as an alternative when she is not able to visit the Defendant's stores.

23)     The website also services Defendant's physical stores by providing information on its brand, track orders, receive promotions and other information that Defendant is interested in communicating to its customers about its physical locations.

24)      Since the website allows the public the ability to view the products available at defendant's locations, purchase women's clothing, swimwear, bridalwear, sleepwear, kid's clothes, home decor, shoes, and accessories through defendant's website, obtain 15% off when you sign up for texts, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores.  By this nexus, the website is characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA, and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its retail brick and mortar stores.

25)     Because the public can view and purchase Defendant's merchandise that is also offered for sale by Defendant at its physical stores, obtain 15% off when you sign up for texts, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand the website is an extension of and gateway to the physical stores, which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E).  As such, the website, as an intangible service, privilege and advantage of Defendant's brick and mortar locations, must be fully accessible and in compliance with the ADA, must not discriminate against individuals with

disabilities, and must not deny full and equal enjoyment of the same services, privileges and advantages afforded to the general public both online and at the physical locations.

26)      At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://www.splendid.com/ Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, and Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA.

27)      Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize, Defendant's physical stores, and purchase Defendant's merchandise, sign up for Defendant's newsletter and create an account through the website and at Defendant's physical stores.

28)      The opportunity to shop Defendant's merchandise from her home is an important accommodation for Plaintiff because traveling outside of the home as a visually disabled individual is often a difficult, hazardous, frustrating, confusing, and frightening experience.  Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

29)       Like most consumers, Plaintiff accesses numerous websites at a time to compare merchandise and prices. Plaintiff may look at several dozens of sites to compare features and prices.

30)      During the months of June and July, 2022, Plaintiff attempted on several occasions to utilize the website to browse through the merchandise to educate herself as to the merchandise and with the intent to make a purchase through the website or at one of Defendant's physical stores.

31)     Places of public accommodation are not just brick-and-mortar structures.  The United States Department of Justice and the binding case law increasingly recognize that private entities are providing goods and services to the public through websites that operate as places of public accommodation under Title III.

32)    Defendant is required to make reasonable accommodations to its websites for individuals with disabilities to allow them to participate in web-based promotions and obtain goods or services via the Internet just as sighted persons are able to do.

33)     Plaintiff utilized Chrome Vox ("Screen Reader Software") to attempt to purchase clothing on Defendant's website.  However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

34)    A person who can see can enjoy the benefits and privileges provided by Defendant's website that include, but are not limited to viewing the products available at defendant's locations, purchasing women's clothing, swimwear, bridalwear, sleepwear, kid's clothes, home decor, shoes, and accessories through defendant's website, obtain 15% off when you sign up for texts, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand.

35)     A person who cannot see, like the Plaintiff in this case, cannot go to Defendant's website and avail themselves of the same privileges. Thus, the Plaintiff has suffered discrimination due to Defendant's failure to provide a reasonable accommodation for Plaintiff's disability.

36)     The Department of Justice has provided useful guidance regarding website accessibility under the ADA, and the binding and persuasive case law in this district has applied the Web Content Accessibility Guidelines ("WCAG") 2.0 or 2.1 to determine accessibility.

37) Defendant's website does in fact fail the following WCAG 2.0-AA Compliance standards and it does not provide sufficient alternatives to serve the equivalent purpose:

System settings while doing the review:

*Operating system: Windows 10*

*Browser: Google Chrome v. 105.0.5195.127*

*Screen Reader: NVDA v. 2022.3*

List of a few of the violations encountered:

Violation: When the website loads for the first time, a modal offering 15% off the first order is activated. The user provides the required information to get the discount, but the discount code generated is not rendered in an audible format, making it unusable.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/nbyqirf0xd2skm7/2022_10_09_182050_01.mp4?dl=0

Violation: When navigating the search results page, all the filter buttons have a *blank* audible label. That audible prompt alone does not provide useful instructions for the user.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/00e5l127wn52vpr/2022_10_09_182050_02.mp4?dl=0

Violation: When navigating the search results page, the items listed have a *No image description graphic link* label. That audible prompt alone does not provide useful instructions for the user.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/00e5l127wn52vpr/2022_10_09_182050_02.mp4?dl=0


Violation: Within the product detail page, several buttons have only an audible label of *button* (e.g. *Add to wish list* button). That audible prompt alone does not provide useful instructions for the user.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/gc407p5cbmm4jp5/2022_10_09_182050_03.mp4?dl=0


Violation: Within the product details, the option to pick color and size is not operable through a keyboard interface. This happens both when accessibility mode is turned on and when it's off (see violation below)

Applicable WCAG 2.1 Standard at Issue: Standard 2.1.1 Keyboard (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/67ctb50jyajg45y/2022_10_09_182050_04.mp4?dl=0

Violation: Within the product details, the option to pick color and size is not operable through a keyboard interface. This shortfall in functionality doesn't allow the user to add a product to the cart.

Applicable WCAG 2.1 Standard at Issue: Standard 2.1.1 Keyboard (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/jus9ww513wu6cfx/2022_10_09_182050_05.mp4?dl=0


Violation: Within the product details, the mechanism for increasing the quantity of the product is not labeled in a way that indicates to the user what it does. The label *Spin button editable selected* is not useful.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/jus9ww513wu6cfx/2022_10_09_182050_05.mp4?dl=0


Violation: When a user tries to add a product to the cart without having selected a color or size (because of the keyboard interface error noted above) the error message is not rendered in an audible format.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.1 Error Identification (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/jus9ww513wu6cfx/2022_10_09_182050_05.mp4?dl=0

Violation: Within the product details, when the user activates the size chart it doesn't receive keyboard operability focus. The focus remains on the product details information. User is unable to shift focus to and navigate through the size chart.

Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/mqdae69dj938lfq/2022_10_09_182050_06.mp4?dl=0

Violation: When the user inputs an incorrect discount code the error message is not rendered in an audible format.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.1 Error Identification (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/4gvnknvg1vemva3/2022_10_09_182050_07.mp4?dl=0

38)     Furthermore, Defendant's website does not contain accessibility assistance that would direct a visually impaired person like the Plaintiff to someone who she can contact for assistance, questions, or concerns.

39)     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

40)     On information and belief, Defendant is, and at all times has been, aware of the barriers to its website which prevent individuals with disabilities who are visually impaired from comprehending the information within same, and is also aware of the need to provide access to all persons who visit its site.

41)     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, such that this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's discriminatory practices in connection with use of its website.

42)     Notice to Defendant is not required because of Defendant's failure to cure the violations.

43)     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

44)     Plaintiff has retained the undersigned attorneys to represent her in this case, and has agreed to pay them a reasonable fee for their services.


## COUNT I – VIOLATION OF THE ADA

45)     Plaintiff realleges paragraphs 1 through 44 as if set forth fully herein.

46)     Defendant owns and operates the https://www.splendid.com/ website, and is a public accommodation subject to the ADA pursuant to 42 U.S.C. §12181(7)(E).

47)     Defendant's website is inaccessible to persons with disabilities like the Plaintiff, who is visually impaired.  Plaintiff was not able to enjoy full and equal access to the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

48)     Defendant's website is not in compliance with the ADA.

49)     Defendant has made no reasonable accommodation for Plaintiff's disability.

50)     A cursory review of a portion of the Defendant's website revealed that the website is not accessible to persons like the Plaintiff that are visually impaired as required by law and for which there is no sufficient alternative on Defendant's website, including:

System settings while doing the review:

*Operating system: Windows 10*

*Browser: Google Chrome v. 105.0.5195.127*

*Screen Reader: NVDA v. 2022.3*

List of a few of the violations encountered:


Violation: When the website loads for the first time, a modal offering 15% off the first order is activated. The user provides the required information to get the discount, but the discount code generated is not rendered in an audible format, making it unusable.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/nbyqirf0xd2skm7/2022_10_09_182050_01.mp4?dl=0


Violation: When navigating the search results page, all the filter buttons have a *blank* audible label. That audible prompt alone does not provide useful instructions for the user.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/00e5l127wn52vpr/2022_10_09_182050_02.mp4?dl=0


Violation: When navigating the search results page, the items listed have a *No image description graphic link* label. That audible prompt alone does not provide useful instructions for the user.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/00e5l127wn52vpr/2022_10_09_182050_02.mp4?dl=0

Violation: Within the product detail page, several buttons have only an audible label of *button* (e.g. *Add to wish list* button). That audible prompt alone does not provide useful instructions for the user.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/gc407p5cbmm4jp5/2022_10_09_182050_03.mp4?dl=0

Violation: Within the product details, the option to pick color and size is not operable through a keyboard interface. This happens both when accessibility mode is turned on and when it's off (see violation below)

Applicable WCAG 2.1 Standard at Issue: Standard 2.1.1 Keyboard (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/67ctb50jyajg45y/2022_10_09_182050_04.mp4?dl=0

Violation: Within the product details, the option to pick color and size is not operable through a keyboard interface. This shortfall in functionality doesn't allow the user to add a product to the cart.

Applicable WCAG 2.1 Standard at Issue: Standard 2.1.1 Keyboard (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/jus9ww513wu6cfx/2022_10_09_182050_05.mp4?dl=0

Violation: Within the product details, the mechanism for increasing the quantity of the product is not labeled in a way that indicates to the user what it does. The label *Spin button editable selected* is not useful.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.2 Labels or Instructions (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/jus9ww513wu6cfx/2022_10_09_182050_05.mp4?dl=0

Violation: When a user tries to add a product to the cart without having selected a color or size (because of the keyboard interface error noted above) the error message is not rendered in an audible format.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.1 Error Identification (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/jus9ww513wu6cfx/2022_10_09_182050_05.mp4?dl=0

Violation: Within the product details, when the user activates the size chart it doesn't receive keyboard operability focus. The focus remains on the product details information. User is unable to shift focus to and navigate through the size chart.

Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/mqdae69dj938lfq/2022_10_09_182050_06.mp4?dl=0

Violation: When the user inputs an incorrect discount code the error message is not rendered in an audible format.

Applicable WCAG 2.1 Standard at Issue: Standard 3.3.1 Error Identification (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/4gvnknvg1vemva3/2022_10_09_182050_07.mp4?dl=0

51)    Due to Defendant's failure to provide an ADA compliant website, the Plaintiff has been injured since she has been denied full access to Defendant's website.

52)    As a result, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to correct the inaccessibility that leads to discrimination against visually impaired persons.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

A.          A declaration that Defendant's website is in violation of the ADA;

B.          An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C.          An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

D.        An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E.        An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

F.        An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

G.        An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

H.        An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.        An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

J.        An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the

public policy statement with an accessible means of submitting accessibility questions and problems.

K.        An award to Plaintiff of her reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.



[1]

## COUNT II – TRESPASS

53)        Plaintiff realleges paragraphs 1 through 44 as if set forth herein.

54)        Defendant's website contains software analytics.  Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

55)        Plaintiff never consented to and was unaware that Defendant's website was placing software on her computer.

56)        Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on her personal computer, which was done without her knowledge and consent.

57)        Defendant's trespass has damaged Plaintiff by affecting the condition and value of her computer.

58)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

> This cookie policy ("Cookie Policy") applies to the websites operated by or otherwise provided to you by Splendid. (Respectively, the "Site/s", and "Splendid", "us" or "we" or "Our"). By accessing and using the Site, you consent to the use of cookies, as described in this Policy. This information is collected by cookies and other similar technologies, such as web beacons. When we refer to "cookies", we mean all of these.

> We expressly reserve the right to modify this Policy from time to time.  If there are any material changes to this Cookie Policy, you will be notified via the Site/s. We encourage you to periodically review this page for the latest information on our privacy practices. Your continued use of the Site constitutes your agreement to be bound by such changes to this Policy. Your only remedy, if you do not accept the terms of this Policy, is to discontinue use of the Site or to refuse accepting cookies by using your browser's settings.

> This Cookie Policy is an integral part of our Privacy Policy and terms and definitions we used and explained in the Privacy Policy, will have the same meaning in this Policy. This Policy explains:

What are cookies?

Why we use cookies?

What cookies are used when you use the Site?

How third parties use cookies on the Site?

Your cookie options

How to manage cookies?

How we Respond to Do Not Track?

How we use cookies?

How you can manage your cookie preferences?

1.1.    What are cookies?

A cookie is a small text file that is stored in your web browser that allows the Site or a third party to recognize you, as a visitor (and not as an individual). Cookies might be used for the following purposes: (1) to enable certain functions; (2) to provide analytics; (3) to store your preferences; and (4) to enable ad delivery and behavioral advertising.

Cookies can either be session cookies or persistent cookies. A session cookie expires automatically when you close your browser. A persistent cookie will remain until it expires, or until you delete your cookies from your browser. Expiration dates are set in the cookies themselves; some may expire after a few minutes while others may expire

after longer periods. Cookies placed by the website you're visiting are sometimes called "first party cookies," while cookies placed by other entities are sometimes called "third party cookies."

Cookies are many times used with a pixel tag on the Sites. Pixel tags (also known as web beacons or clear GIFs) are typically transparent graphic images placed on a website. These pixels are used in combination with cookies to measure the actions of visitors to their websites that arrive through the services. For example, we, or our business partners may use pixel tags to track interactions on the Site/s or to understand referrals to partners from our Site/s, or, for Retargeting purposes, as we described in the Privacy Policy, or other interest-based advertising, as further explained in section below.

1.2.    Why we use cookies?

Cookies are used on our website to collect information about your user preferences, browsing habits and the device you have used to access our website (including the make, model and operating system, IP address, browser type and mobile device identifiers) so that we can:

provide essential features and functionality on our website;

help ensure that you get the best from our website by making it as easy and intuitive as possible for you to use;

remember choices you make and recognize you when you return, so you don't have to remind us each time you visit; and

monitor and analyze website usage and performance so that we can improve how it operates (including in relation to security) and the product selection and services available through it.

1.3.    What cookies are used when you use the Site?

When you access and/or use the Site or interact with the services, we, or a third party may place a number of cookies in your browser. Some of the cookies will only be used if you use certain features or select certain preferences, and some cookies will be used for a longer-term purpose, as described in our Privacy Policy.

Different cookies have different functions. Each cookie serves one of the following purposes:

3.1.    Strictly necessary cookies

These cookies are essential for our website to operate. For example, they enable you to log into secure areas of our website.

3.2.    Functionality cookies

These cookies allow our website to remember choices you make when visiting our website and recognize you when you return.  For example, functionality cookies allow us to remember information such as your login details if you choose to create an account with us and other customized features. When you first access our websites, we ask you to read our Cookie and Privacy policies and acknowledge the use of the cookies before proceeding to use our websites.

### 3.3.    Analytical/performance cookies

We use Google Analytics, a popular website analytics service provided by Google, and other analytical/performance cookies for the purposes of recognizing and measuring the number of visitors to our website and analyzing interactions with our website, such as items clicked on, web pages viewed and any web pages where users are encountering download error messages from time to time. The analytics service uses this information to compile anonymized reports on website activity, which we use to help improve the way our website works. See here for further information from Google about how Google Analytics works.

To opt-out of cookies provided by Google Analytics, you can install the Google Analytics opt-out browser add-on available here. The add-on will prevent your browser from sending information to Google Analytics.

### 3.4.    Targeting/advertising cookies and social plugins

Our website may also use third parties (including Facebook) and social plugins (e.g., the Facebook "Like" button) to enable you to easily share information with others and help us carry out our advertising and marketing activities. When you visit our websites, these third-party operators may be able to place a cookie on your device, enabling that operator to recognize individuals who have previously visited our website and to collect information about your browsing habits, including the web pages you've viewed and the links you've clicked through. This information is used to make our website more relevant

to your interests. It is also used to make advertisements you see online more relevant to you, as well as to limit the number of times you see an advertisement.

If you have previously logged into a social media website (e.g., Facebook) before browsing on our websites, the social plugin or cookie allows that social media website to receive information about your visit to particular pages on our website. The social plugin may collect this information for any such visitors who have logged into social networks, whether or not they specifically interact with the plugin on our website (e.g., by clicking "Like" or "Share"). The social plugin may also allow the social media website to share information about your activities on our website with other users of their social media website.

Targeted/advertising cookies and social plugins also enable us to measure and analyses the overall effectiveness of our advertising and marketing campaigns so that we can improve them in the future.

1.4.    How third parties use cookies on the Site?

Third party entities like analytics, Third Party vendors or ad networks generally use cookies to collect user information on an anonymous basis. They may use that information to better understand users' activities on the Site and other websites that they visited immediately after.

1.5.    What are my cookie options?

If you don't like the idea of cookies or certain types of cookies, you can change your browser's settings to delete cookies that have already been set and to not accept new cookies. To learn more about how to do this, visit the help pages of your browser. Please note, however, that if you delete cookies or do not accept them, you might not be able to use all of the features we offer, you may not be able to store your preferences, and some of our pages might not display properly.

You may also opt out of third-party cookies by following the instructions provided by each third party in its privacy policy

1. How to manage cookies?

As we explain in our Cookie Policy, cookies help you to get the most out of our Site/s and services. If you do disable cookies, you may find that certain sections of our Site do not properly function.

6.1. How to disable behaviourally targeted advertising cookies?

If you are concerned about behaviourally targeted advertising cookies (which serve you advertisements based on your use of the Website and other websites), users based in the European Union can visit www.youronlinechoices.eu and users based in the US can visit http://www.aboutads.info/choices/ for more information.

6.2. How to enable and disable cookies using your browser?

Information about cookies is usually found in the "Help" section of the web browser. Below are some links to the "Help" sections of some commonly used web browsers:

<u>Internet Explorer</u> – http://support.microsoft.com/kb/196955

<u>Windows Phone</u> – http://www.microsoft.com/windowsphone/en-us/howto/wp7/web/changing-privacy-and-other-browser-settings.aspx

<u>Google Chrome</u> – http://support.google.com/chrome/bin/answer.py?hl=en&answer=95647

<u>Google Android</u> – http://support.google.com/android/?hl=en

<u>Mozilla Firefox</u> – http://support.mozilla.org/en-US/kb/cookies-information-websites-store-on-your-computer?redirectlocale=en-US&redirectslug=Cookies

<u>Opera</u> – http://www.opera.com/browser/tutorials/security/privacy/

<u>Safari</u> – http://www.apple.com/support/safari/

Note there are various levels of cookie enablement and disablement in Firefox. For more information, refer to the following page from Mozilla: <u>http://support.mozilla.org/en-US/kb/Enabling%20and%20disabling%20cookies</u>

1.    How we Respond to Do Not Track?

Certain web browsers and other programs may be used to signal your preferences to Splendid about how or whether Splendid or third parties may collect information about your online activities. Currently, our websites and online resources do not respond to such signals.

1.8.    How we use cookies?

Our website uses first party cookies, which allow us to distinguish you from other users of the website. They maintain functionality as you move between pages and help us to improve our site. We also use some widely-used third-party social media plugins as marketing tools, and to provide convenience tools for our visitors, which create cookies.

1.9.    How you can manage your cookie preferences?

When you first access our websites, we ask you to read our Cookie and Privacy policies and acknowledge the use of the cookies before proceeding to use our websites.

The functionality, analytical/performance and targeting/advertising cookies on our website (listed above) are not strictly necessary for our website to work but improve its overall performance and are intended to provide you with a better browsing experience.

Many web browsers accept cookies by default. You can usually change the settings to refuse new cookies, block or delete some or all existing cookies or alert you when new cookies are set on your device. As the precise means by which you may do this will vary from browser to browser, please visit your browser's help or settings function for more information.

Alternatively, you can visit www.aboutcookies.org for further information on how to change cookie settings across various browsers (e.g. Mozilla Firefox, Google Chrome, Internet Explorer and Safari).

Please note that if you use different devices to access and use our website, you will need to ensure that each browser on each device is adjusted to suit your cookie preferences.

For further information about how to opt-out of the third party cookies used on our website, please review the policies of the relevant third parties referred to in this Cookie Policy. Alternatively, in relation to third party targeting/advertising cookies, you can visit the Network Advertising Initiative's opt-out page here, which provides an online tool for you to remove third party cookies placed by the Network Advertising Initiative's members from your devices. Further, the Digital Advertising Alliance maintains a website where consumers can opt out from receiving interest-based advertising from some or all of the network advertising companies participating in the program, which is available at www.AboutAds.info/choices/.

This Cookie Policy was last updated in February 2020.

59)      Due to Plaintiff's disability, she could not understand Defendant's website and she could not give informed consent to Defendant's installation of data and information tracking software on her computer.  Defendant also could not give informed consent to Defendant's collection of her browsing history and the placement of analytics on her computer.

60)      Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from her computer and determine which programs should be installed and operated on her computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

**<u>Request for Jury Trial</u>**

61)      Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email:  radamslaw@bellsouth.net
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434